21 So.2d 668

## GRIFFIN v. IRWIN.
### 8 Div. 305.

Supreme Court of Alabama.

March 8, 1945.

Rehearing Denied April 26, 1945.

632

Chas. H. Eyster and Ben L. Britnell, both of Decatur, for appellee.

Norman W. Harris, of Decatur, for appellant.

SIMPSON, Justice.

The probate court denied the petition of appellant for letters of administration on the estate of her deceased sister, against the adversary claim of appellee, a nephew of intestate, on the alleged ground of incompetency by reason of "improvidence and physical defect."

Appellant was in the second degree of kinship and appellee in the third degree, and if not disqualified under the law to serve, she should have been appointed because of the statutory preference accorded her under § 81, Title 61, Code 1940.

▮The rule of our decisions is that every one enumerated in the foregoing section is a fit person to serve unless specifically disqualified by § 69, Title 61, Code 1940, and, if not so disqualified, the court has no authority to refuse the issuance of letters to such preferred person. Williams v. McConico, 27 Ala. 572; Kidd v. Bates, 120 Ala. 79, 23 So. 735, 41 L.R.A. 154, 74 Am.St.Rep. 17.

▮These enumerated grounds of unfitness are held to be exclusive and disqualification of an applicant to administer an estate who is otherwise entitled to preference, not based on one of these specified grounds, is not authorized. Crommelin v. Raoull, 169 Ala. 413, 53 So. 745; Nichols v. Smith, 186 Ala. 587, 65 So. 30; Bell v. Fulgham, 202 Ala. 217, 80 So. 39; Marcus v. McKee, 227 Ala. 577, 151 So. 456.

▮"In respect to enforcing the preferential right to administer as declared by section 5742, Code, as amended by Gen. Acts 1931, p. 649 [Code 1940, Tit. 61, § 81], the probate court has no discretion. It may not weigh the relative qualifications of two applicants and choose between them, when one has a statutory preference. The right is not lost because one not in the same preferred class may be found by the court to be better qualified, unless the one who is preferred is disqualified under section 5730, Code (now § 69, Title 61, Code)." Johnston v. Pierson, 229 Ala. 85, 87, 155 So. 695, 696, reaffirmed in Calvert v. Beck, 240 Ala. 442, 199 So. 846.

In approaching a consideration of the question it may be observed at the outset that, historically, it has been the policy of the law to award administration of estates of decedents to those having the greatest interest therein, the reason being that such persons would be most likely to exercise the greatest care in its management. 3d Schouler, 6th Ed., Administrators, p. 1792, § 1591.

In the case at bar appellant's share of the estate will be a one-fourth interest and appellee's a one-twenty-eighth interest.

▮The rule of common law was that all persons might be appointed executors who are capable of making a will, idiots and lunatics being practically the only ones disqualified (Kidd v. Bates, supra), and the holding in this state is that the statutory prescriptions as to the qualifications of executors pertain also to administrators. These exclusive grounds of unfitness, specified in said § 69, apply alike to applicants for letters of administration and letters testamentary. Crommelin v. Raoull and Williams v. McConico, supra.

▮Broadly stated, old age and bodily infirmities do not disqualify. There must be such physical debility as to indicate a lack of intelligent capacity to execute the duties of the trust, the rule of disqualification in this regard being that letters should

not be issued "to one unable, by reason of incurable bodily disease, to understand the duties of a given trust sufficiently to safeguard the interest of the living." In re Leland's Will, 219 N.Y. 387, 394, 114 N.E. 854, 856; Mobley v. Mobley, 149 Md. 401, 131 A. 770(9).

It has been declared in our decisions that the Alabama statute is modeled after that of New York and that we give consideration to and, if consistent, adopt the construction placed upon the similar New York statute by the courts of that state. Kidd v. Bates, 120 Ala. at page 87, 23 So. 735, 41 L.R.A. 154, 74 Am.St.Rep. 17. This court in the case of Marcus v. McKee, supra, adopted the following from the Leland case, above, as an apposite statement of the pertinent rule: Appointment is not to be refused merely because the testator's selection does not seem suitable to the judge. Old age or bodily infirmities, lack of business experience and capacity, or ignorance of the law, do not disqualify. They (the courts) will not add disqualifications to those specified by the statute.

Now, coming to a consideration of this case, the statutory disqualifications effective to preclude appellant from appointment are (1) non-age, (2) conviction of an infamous crime, or (3) incompetence from intemperance, improvidence or want of understanding. § 69, Title 61, Code 1940.

As regards these disqualifications and appellant's fitness, the court found that she is "mentally alert, and has never been convicted of an infamous crime, nor in anywise disqualified on account of intemperance, but * * * that from improvidence, and physical defect, Mrs. Hattie J. Griffin is incompetent, unable and incapable to perform the duties of the personal representative of said Estate." Thus was she denied the issuance of letters though preferentially entitled thereto under the law.

After a studious consideration, we are convinced that such a finding is unsupported by the evidence and was laid in error.

"Physical defect" unless debilitating to the extent hereinabove delineated—clearly not proven—does not disqualify. And the evidence in the record before us is, to our minds, not such as would justify a finding that appellant was improvident within the meaning of the statute.

Briefly, the evidence upon which the appellee seeks to sustain the finding of im-providence is: Mrs. Griffin has for the last four or five years been afflicted with arthritis or rheumatism in her knees and ankles, and to some extent in her arms and wrists, and when walking uses a crutch. She has seldom been away from home during this period, but asserts that aside from this ailment she is in good health and has not been under the care of a physician for about eight years. She has been, for a number of years, without the help of a servant, and does the housekeeping and housework herself, such as cooking, waiting on the table, scrubbing the floors, cleaning up, etc. Though prior to her ailment, she attended all the club, society, school and church meetings, since its incipiency she has absented herself from them unless held in her home. This staying at home has been so continuous that she never goes to the stores, bank, post office or town, a short distance away, for any purpose. She and her daughter testify the reason for her seclusion is her pride and desire to avoid the embarrassment of being seen walking with a crutch. They assert that she can, if necessary, make trips and attend to the duties of administration. In answer to the charge that indisposition caused her to be absent from the hearing, resulting in the taking of her deposition at home, she affirmed that fact but asserted that she could have gone to court if necessary, but if not necessary she preferred not to because of her physical condition; that her attorney told her that it was not necessary and that, inasmuch as she had never been in a courtroom in her life, she would rather not go.

Stress to sustain the charge of improvidence is laid upon her statement in her deposition that her daughter and step-daughter, living in Decatur, could and would help her transact the duties of her office. The record discloses the following: "In response to the question as to whether I mean by that statement I would have to depend on them to attend to any business I had at Decatur, I answer I could look after it myself. In response to the question as to whether it would be my intention to have them look after it, I say, 'They help me do everything in the world I do; why couldn't they help me do that? Wouldn't that be all right?' I am physically able to make periodic trips to Lawrence County and out on the farm for the purpose of finding tenants or making contracts with tenants and overlooking the crops and making supervision of the farming operations over there. I could go this

afternoon if it was necessary. I would have to have the assistance of someone to get there."

The estate consists of a small bank account, a farm in Lawrence County, vacant lots in Birmingham, and a residence with personal property and household goods of decedent, situated in Decatur. It seems to be conceded that the administration of the estate should be concluded within a year.

■ Scanning the evidence in an aspect most adverse to appellant, we think it insufficient to sustain the disqualification of improvidence, rendering the applicant unfit to transact the duties of the trust.

■ Improvidence as here used has been defined as that probable lack of care and foresight in the management of the estate which would endanger its safety in case administration should be committed to the applicant. Nichols v. Smith, 186 Ala. at page 592, 65 So. 30; 33 C.J.S., Executors and Administrators, p. 947, § 46, subsec. e; In re Ferguson's Will, 41 Misc. 465, 84 N. Y,S. 1102.

The disqualifying term means more than the lack of capacity to accumulate a considerable estate (Nichols v. Smith, supra, 186 Ala. at page 591, 65 So. 30), though the evidence here indicates that appellant is a woman of business capacity and thrift, is a highschool graduate, has had several special courses at the University of Alabama, had been a school teacher for a number of years, and is managing her own and rental property, maintaining the repairs thereon, keeping accounts, reporting the income, etc.

A much quoted New York decision observed that improvidence, as termed in the statute, "refers to habits of mind and conduct which become a part of the man, and render him generally, and under all ordinary circumstances, unfit for the trust or employment in question." In Matter of Flood's Will, 236 N.Y. 408, 411, 140 N.E. 936, 937, quoting Emerson v. Bowers, 14 N. Y. 449. See also In re Schwartz' Estate, 138 Misc. 537, 246 N.Y.S. 478, 480.

■ It is also stated that incompetence must be established by clear and convincing evidence to defeat the right to letters. In re Taylor's Estate, 61 Nev. 68, 114 P.2d 1086, 135 A.L.R. 580; In re Bauquier's Estate, 88 Cal. 302, 26 P. 178, 532.

The underlying principle is that the exclusive grounds of incompetence having been prescribed by the legislature, no discretion is left with the court to add to or enlarge them.

Harmonious to this principle it has been held that not even legal or moral guilt or profligacy (unless actually convicted of infamous crime) will bar a person otherwise entitled from the administration as next of kin. Coope v. Lowerre, 1 Barb. Ch., N.Y., 45; In re Bauquier's Estate, supra. In this connection, as illustrating the strictness with which the courts have applied the rule, it has been held that interests antagonistic and hostile to that of the estate and legatees do not disqualify (Kidd v. Bates and Williams v. McConico, supra); nor will the father be denied the right to administer the estate of his infant child, on the ground of improvidence, though he had no particular fitness for the office, had abandoned his family, had neglected them under circumstances which should have stimulated his care for them, and though his desire to administer was for the purpose of using the situation for his best advantage. Nichols v. Smith, supra. Nor may the disqualification of improvidence be invoked to bar the right to letters because the applicant cannot read or write (Bell v. Fulgham, supra); nor because the applicant is of great age, cannot read, write or speak the English language (In re Estate of Pacheco, 23 Cal. 476, 480); nor because he is paralyzed so as to be deprived of the use of his right side and bedridden when of sufficient mental capacity to execute the duties of the trust (Mobley v. Mobley, 149 Md. 401, 131 A. 770); nor where applicant avowed her intention to expend out of a small estate an excessive amount for an elaborate funeral for the intestate, where she testified of her willingness and expectation to pay from her own funds the amount disallowed by the court as excessive, she having an income and a future which were secure. Taylor case, supra.

Testing the evidence by the authorities, we are constrained to hold that the asserted incompetence of appellant was not established by that strict measure of proof exacted by law.

■ The fallacy of the contention of her "improvidence" is, it seems to us, in assuming the disqualifying fact as having been established by proof that appellant might, by reason of her physical ailment and her expressed intention, if necessary, resort to the assistance of relatives in the

proper execution of her duties. This by no means substantiates that she is improvident. The term implies and connotes a quality of personality, a trait of character and a course of conduct already established as indicated by prior actions, logically leading to the deduction that she presently is an improvident person and thus disqualified. The evidence is, as we view it, entirely lacking to sustain such a conclusion.

Another persuasive argument, though not mentioned in briefs, against the refusal of letters to applicant, is that her fitness or unfitness is to be determined on the same basis and regulated by the identical rules of disqualification as in case of an executor named in a will. It certainly could not be successfully advocated that, had the decedent left a will and in it designated Mrs. Griffin as her executor, the court would have been warranted in refusing her letters testamentary.

It seems sound to hold that the proper remedy to protect the estate from injury or diminishment if, in the course of its administration by appellant, the dangers apprehended by appellee should arise or become apparent, is accorded under other sections of the Code (§§ 178 and 187, Title 61), rather than to presently preclude her from the manifest right to the office by a nebulous claim of improvidence. McFry v. Casey, 211 Ala. 649, 101 So. 449.

The theory is also advanced that the change of the word "fit" to "satisfactory" in the amending act of 1936 (now § 81, Code) evinces a legislative purpose to enlarge the disqualifications for administrators so as to give the appointing court some discretion in the matter and the right to declare an applicant unfit though not possessing the specified statutory disqualifications. We are persuaded, however, to the contrary.

The section of the Code (§ 71) with reference to the granting of letters testamentary remains unchanged and provides that if the person or persons named in the will as executor or executors is, or are, from any of the causes enumerated in said § 69 "unfit to serve" then letters cum testamento annexo may be granted on the testator's estate, etc. In view of the settled holding that § 69 applies alike to both classes of administrations, it could not be conceded that the legislature intended to effect a transmutation as to one and not as to the other. It is inconceivable that the whole body of our established law on the subject was meant to be altered by a change of this one word.

Moreover, to assume that the legislature intended, by this change of one word, to vest in the probate court a discretion of selection of an administrator which he might deem satisfactory to serve would defeat and render abortive the purpose of the other statute according preferential rights to next of kin. Hence our former opinion in Calvert v. Beck, supra (rendered after passage of the amending act), in which it was said that, as to such selection, the probate court has no discretion and may not weigh the relative qualifications of applicants when one has a statutory preference over the other. 240 Ala. at page 443, 199 So. 846.

It results from these conclusions that the judgment giving rise to the appeal must be reversed and remanded with directions that letters be issued to appellant.

Reversed and remanded with directions.

All Justices concur except BROWN, J., who dissents on the grounds stated in his opinion in Moore v. Strickland, ante, p. 624, 21 So.2d 665.